CLIFTON TRUST COMPANY, A BANKING CORPORATION OF THE STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT, v. WINDSOR MANUFACTURING COMPANY, INC., DEFENDANT-APPELLANT.

Argued January 22, 1941—Decided February 7, 1941.

Before Justices BODINE and PORTER.

For the defendant-appellant, *Michael Shershin* and *Aaron Heller.*

For the plaintiff-respondent, *Abraham Feltman.*

BODINE, J. A factory building in Clifton was leased to the appellant. The question involved between lessor and lessee is: Who should make payment for the water service charge in connection with a sprinkler system installed in the premises? The District Court decided in favor of the landlord and the defendant appeals.

The water charge for fire supply was $26.45 a month. The rate for the first month being unpaid, the landlord paid the same and brought this suit. The final determination in this cause will be dispositive of the issue during defendant's occupancy of the premises.

The second paragraph of the lease was a special typewritten article substituted for a printed form. It is as follows (the italics ours): "Second—That the Tenant shall take good care of the premises and shall at its own cost and expense make all repairs, except structural repairs and repairs to the oil burner, boilers, sprinkler system and plumbing due to defective materials or workmanship, and not due to the negligence of the Tenant. *The Landlord further* agrees to keep the sprinkler system under the proper and necessary *pressure required by the Board of Fire Underwriters or other municipality having jurisdiction there."*

The landlord's obligation to keep the sprinkler under necessary pressure was clearly provided for. The bill paid, for which recovery was sought, was the stand-by charge for fire supply—"a ready to serve charge." The proofs showed that no water flowed into the mill from this service except in the event of fire. The charge was made necessary because of the sprinkler system. The sprinkler system required water with pressure behind it if it was to work when needed. The charge was not for water furnished but for a pressure supply when needed in the sprinkler.

The twenty-second paragraph of the lease in the printed form is as follows: "The Tenant shall pay the regular annual rent or charge, and all meter charges, which is or may be assessed or imposed upon the demised premises for Water, when due during the term, and if not so paid, the same shall be added of the month's rent next accruing."

The second clause of the lease obliged the landlord to keep

the sprinkler system under proper and necessary pressure and the twenty-second paragraph obliged the tenant to pay the regular annual rent or meter charge for water. The question is: Was the landlord obligated to pay the pressure charge and the tenant only the charge for water consumed upon the premises? Certainly, the sprinkler system was useless without the water pressure.

The learned judge of the District Court regarded the second clause as requiring the landlord to keep the sprinkler system in repair and the twenty-second clause as requiring the tenant to pay the pressure charge, because he was to pay the regular water charge. Appellant argues that the pressure water rate although regular was not a water charge in the sense that it was exacted for the use of water, but was exacted for the stand-by service—a necessary exaction if the sprinkler system was to be kept under necessary pressure; that since the landlord was so obligated he must pay. It is well known that a sprinkler system results in the reduction of fire insurance premiums.

It appears from the lease that the building was valuable and the land upon which it stood of comparative little value; hence fire insurance was very necessary. The landlord was obligated to rebuild provided the cost did not exceed $53,000. If the tenant performed for four years and the building was destroyed by fire, the defendant could compel rebuilding not to exceed a cost of $53,000, and exercise its option to purchase by the payment of $3,000 and the giving back of a purchase-money mortgage for $45,000. No wonder the landlord agreed to keep the sprinkler system under the proper and necessary pressure. This was a primary obligation under the lease and one dictated by self-interest.

It is argued that the duty to perform was assumed in the second clause of the lease inserted in lieu of the printed form, and that the latter clause obligating the tenant to pay the regular water charges is inconsistent with the earlier clause and should not have prevailed. *Sheehan* v. *MacMurray,* 109 *N. J. Eq.* 564. At all events, there was such ambiguity in the lease as called for explanation. If the words "to keep the sprinkler system under proper and necessary pressure" had

a customary meaning among the owners and occupants of commercial buildings in the vicinity such meaning, upon a proper foundation being laid, should have been shown. *Halsey* v. *Adams,* 63 *N. J. L.* 330. Such proof was excluded. The language of the contract being at best ambiguous, clearly the trial judge erroneously excluded proof of the intent of the parties as to how the contract was intended to be carried out. Parol testimony is, of course, not admissible to vary or alter the terms of a written contract. *Meserve* v. *Traverso,* 119 *N. J. L.* 566.

The judgment is reversed, to the end that there may be a new trial.